**UNITED STATES of America,**
**Appellee,**

v.

**Fred Louis ALLERY, Appellant.**

**No. 75–1310.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1975.

Decided Dec. 9, 1975.

David Garcia, Devils Lake, N. D., for appellant.

Eugene K. Anthony, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Fred Allery appeals from his conviction by a jury of attempting to rape his twelve-year-old daughter, in violation of 18 U.S.C. § 1153 and § 12–30–01 of the North Dakota Century Code, and the subsequent sentence of one year and one day.

There is one major question raised on appeal. Allery asserts that the trial court erred in allowing his wife to testify against him as to his actions on the evening of the attempted rape and as to previous alleged sexual misconduct with the prosecutrix and other minor female children in their family. We affirm.

Allery and his wife testified that he returned to his home on the Turtle Mountain Indian Reservation in the early evening after an afternoon of drinking. He remembers taking a short trip with his family to a neighboring farm to buy cream, but does not recall anything else until the next morning when he awoke in the Belcourt, North Dakota, Police Station.

Prosecution testimony tending to implicate the defendant was given by the prosecutrix, her sisters, Emily, aged sixteen, and Dorine, aged thirteen, her married sister, Gail Plant, aged twenty-three, and by Allery's wife, Mildred. Allery was found not guilty of the charges of rape and incest set forth in the indict-

ment, but was found guilty of a lesser included offense of attempted rape.

Allery asserts that the testimony of his wife as to his activities on September 17, 1974, and on other occasions violated the general common law privilege that prohibits testimony of one spouse against the other. He also asserts that § 31–01–02 of the North Dakota Century Code prohibited his wife's testimony against him.[1] He further contends that state evidentiary rules control this federal criminal prosecution.

■ We hold initially that the common law evidentiary rules as developed through federal court decisions and supplemented by acts of Congress control in federal criminal cases. Rule 26 of the Federal Rules of Criminal Procedure states:

* * * The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.[2]

The Committee Note to Rule 26 cites *Funk v. United States,* 290 U.S. 371, 78 L.Ed. 369 (1933) and *Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934), as the source of this rule. These cases, concerning the extent of the marital privilege, held that in the absence of federal statute, federal courts in criminal cases are not bound by state rules of evidence but:

* * * are governed by common-law principles as interpreted and applied by the federal courts in the light of reason and experience.

*Wolfle v. United States, supra* at 12, 54 S.Ct. at 279.

This position was reiterated by Congress in the enactment of Rule 501 of the Federal Rules of Evidence and in the Committee Notes to Rule 501.[3]

---

1. § 31–01–02, North Dakota Century Code, states:

A husband cannot be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage. This section, however, shall not apply to a civil action or proceeding by one against the other, nor to a civil action or proceeding where one spouse attacks the character of the other, nor to a criminal action or proceeding for a crime committed by one against the other, nor to an action or proceeding to enforce support of minor children.

Section 31–01–02 has been at least partially amended by § 50–25.1–10, passed in 1975, which abrogates the marital privilege insofar as it includes communication between spouses in reports to the juvenile courts filed by school, medical or law enforcement personnel concerning child abuse or neglect.

2. Allery was indicted on February 19, 1975, trial was held on March 18, 1975, and he was sentenced on April 18, 1975. Therefore, Rule 26 of the Federal Rules of Criminal Procedure was controlling during this action. The above quoted language was deleted from new Rule 26, effective July 1, 1975, because thereafter the Federal Rules of Evidence govern the admissibility of evidence, competency of witnesses and privilege. *See* Advisory Notes to the Federal Rules of Evidence. The language of Rule 26 as to privileges was effectively carried over into Rule 501 of the Federal Rules of Evidence. *See,* n. 3, *infra.*

3. Rule 501 of the Federal Rules of Evidence states:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

■ Federal courts may, however, look to the privileges created by state courts and applicable state statutes if the court finds them appropriate within the guidelines set forth in Federal Rule of Criminal Procedure 26 and Federal Rule of Evidence 501. *See Hearings on the Proposed Rules of Evidence Before the Special Subcommittee on Reform of Federal Criminal Laws of the House Committee on the Judiciary,* 93rd Cong., 1st Sess., at 519–520 (1973).[4]

■ Three types of marital privilege were recognized at common law: (1) incompetency, where a spouse is determined to be incompetent to testify in civil or criminal proceedings for or against the other; (2) anti-marital facts, whereby one spouse could prevent the other from testifying against the other although otherwise competent; and (3) marital confidential communications, which prohibits testimony concerning intra-spousal, confidential communications arising from the marital relationship. *See generally 8 Wigmore on Evidence* §§ 2332–2341 (McNaughton rev. 1961); *McCormick on Evidence* §§ 78–86 (2d ed.); *United States v. Redstone,* 488 F.2d 300, 304 (8th Cir. 1973). The first type of marital privilege was effectively abolished in the federal courts as early as 1933. *Funk v. United States, supra* and *Wolfle v. United States, supra.* There is no claim asserted here that Mrs. Allery's testimony involved confidential marital communications so the sole issue remaining is the extent of the privilege for anti-marital facts.

■ The general rule that one spouse cannot be a witness against the other in criminal cases has been followed in federal courts on the policy grounds that such a privilege is "necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well." *Hawkins v. United States,* 358 U.S. 74, 77, 79 S.Ct. 136, 138, 3 L.Ed.2d 125 (1958). *Accord, Griffin v. United States,* 336 U.S. 704, 714, 69 S.Ct. 814, 93 L.Ed. 993 (1949). However, criticism of the privilege for anti-marital facts as a mechanism for the suppression of truth and agitation for its abolition has been widespread among commentators. *See e. g., 8 Wigmore on Evidence, supra,* § 2228 and *McCormick on Evidence, supra,* § 88.

■ The rule is subject to the well-established exception where one spouse commits an offense against the other. *Wyatt v. United States,* 362 U.S. 525, 526, 80 S.Ct. 901, 4 L.Ed.2d 931 (1960); *Stein v. Bowman,* 13 Pet. 209, 221, 38 U.S. 209, 221, 10 L.Ed. 129 (1839); *United States v. Redstone, supra; Grulkey v. United States,* 394 F.2d 244, 245–246 (8th Cir. 1968). An "offense against the other" has been broadly interpreted to include any personal wrong done to the other, whether physically, mentally or morally injurious. *Wyatt v. United States, supra,* and *Shores v. United States,* 174 F.2d 838 (8th Cir. 1949) (violations of the Mann Act); *Herman v. United States,* 220 F.2d 219 (4th Cir. 1955) (fraud against the wife); *United States v. Ryno,* 130 F.Supp. 685 (S.D.Cal. 1955), *aff'd on other grounds,* 232 F.2d 581 (9th Cir. 1956) (adultery).

The precise question presented here, whether the exception to the marital privilege that allows adverse testimony when the alleged crime is an offense against the other spouse includes harm to a child or a stepchild of defendant, has not been previously decided by the federal courts. *See United States v. Shipp,* 409 F.2d 33, 35 n. 3 (4th Cir.), *cert. denied,* 396 U.S. 764, 90 S.Ct. 140, 24 L.Ed.2d 117 (1969).

However, in preparing the new Federal Rules of Evidence, the Advisory Committee recognizes the need to expand this exception to allow testimony of one spouse against the other where an alleged crime has been committed against a child of either spouse. The Committee stated in proposed Rule 5–05, Husband-wife privilege:

4. Reported in Am.Jur.2d *Federal Rules of Evidence,* Appendix 4 at 277–278 (1974).

(a) *General rule of privilege.* An accused in a criminal proceeding has a privilege to prevent his spouse from testifying against him.

(b) *Exceptions.* There is no privilege under this rule (1) in proceedings in which one spouse is charged with a crime against the person or property of the other *or of a child of either* * * *. (Emphasis added.)

This language was included in the proposed rules adopted by the United States Supreme Court and sent to Congress for approval. However, the whole section on privileges was abandoned by Congress and was replaced by Rule 501.[5]

A careful review of the legislative history behind the rejection of the changes proposed in Article V and the passage of Rule 501 does not indicate that Congress disapproved of the expansion of this exception but rather that any substantive changes should be done on a case-by-case basis. S.Rep.No.93–1277, 93rd Cong., 2nd Sess. (1974), states:

* * * It should be clearly understood that, in approving this general rule as to privileges, the action of Congress should not be understood as disapproving any recognition of a psychiatrist-patient, or husband-wife, or any other of the enumerated privileges contained in the Supreme Court rules. Rather, our action should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship and other privileges should be determined on a case-by-case basis.

1974 *U.S.Code, Cong. & Ad.News* at p. 7059.

Indeed, it appears that Congress was concerned primarily in the effect of the proposed privilege rules on civil cases and whether the new rules would encourage forum shopping in diversity cases. *See* H.R.Rep.No.93–650, 93rd Cong., 2nd Sess. (1974).[6]

■ We hold, therefore, that this Court, as well as other federal courts, has the right and the responsibility to examine the policies behind the federal common law privileges and to alter or amend them when "reason and experience" so demand.

We turn then to the policy behind the marital anti-facts privilege and to whether that policy in light of today's society requires an expansion of the exception allowing testimony when a crime has been committed against the child of either spouse. We recognize that the general policy behind the husband-wife privilege of fostering family peace retains vitality today as it did when it was first created. But, we also note that a serious crime against a child is an offense against that family harmony and to society as well.

Second, we note the necessity for parental testimony in prosecutions for child abuse. It is estimated that over ninety percent of reported child abuse cases occurred in the home, with a parent or parent substitute the perpetrator in eighty-seven and one-tenth percent of these cases. *Evidentiary Problems in Criminal Child Abuse Prosecution,* 63 Geo.L.J. 257, 258 (1974).

Third, we recognize that

* * * [a]ny rule that impedes the discovery of truth in a court of law impedes as well the doing of justice.
* * *

*Hawkins v. United States,* 358 U.S. 74, 81, 79 S.Ct. 136, 140, 3 L.Ed.2d 125 (1958) (Stewart, J. concurring).

Fourth, we acknowledge the strong state court authority for the proposition that a crime against a child of either spouse is a wrong against the other spouse rendering anti-marital testimony admissible. *See e. g., People v. Miller,* 16 Mich.App. 647, 168 N.W.2d 408 (1969);

---

**5.** *See* n. 3, *supra.*

**6.** Reported in 1974 *U.S.Code, Cong. & Ad. News* at pp. 7082–7083.

*Balltrip v. People,* 157 Colo. 108, 401 P.2d 259 (1965); *Chamberlain v. State,* 348 P.2d 280 (Wyo.1960); *State v. Kollenborn,* 304 S.W.2d 855 (Mo.1957).

Finally, during the last fifteen years alone, at least eleven states have passed laws rendering the marital privilege unapplicable in cases of charged child abuse and neglect.[7]

■ We conclude, therefore, that the exception to the anti-marital facts privilege for offenses committed against a spouse should be expanded to include crimes done to a child of either spouse, and that the trial court here did not err in allowing the testimony of Mrs. Allery as to the activity of her husband on the night of September 17, 1974, or other alleged sexual misconduct upon her children.

■ Allery also asserts that the trial court erred in failing to grant his motions for acquittal at the conclusion of the government's testimony and before the case went to the jury. After a careful review of the record, we conclude that there was sufficient evidence to go to the jury and the trial court did not err in refusing to grant the two motions for acquittal.

HENLEY, Circuit Judge (dissenting).

The majority quite properly holds that this court has the responsibility to examine the policies behind the federal common law privileges and to alter or amend them when reason and experience so demand, but I am not convinced that the exceptions to the marital privilege should be expanded so as to permit testimony by a spouse concerning crimes allegedly done to a child of either spouse.

As recently as 1958 the Supreme Court in speaking of exceptions to the rule of marital privilege said in part:

The limited nature of these exceptions shows there is still a widespread belief, grounded on present conditions, that the law should not force or encourage testimony which might alienate husband and wife, or further inflame existing domestic differences. Under these circumstances we are unable to subscribe to the idea that an exclusionary rule based on the persistent instincts of several centuries should now be abandoned.

*Hawkins v. United States,* 358 U.S. 74, 78–79, 79 S.Ct. 136, 139, 3 L.Ed.2d 125 (1958).

Since *Hawkins* some states have broadened and refined exceptions to the marital privilege[1] and admittedly there have been some proposals for change by rule. The Congress, however, has noted that change, if any, should be determined on a case-by-case basis[2] and this court obviously does not shrink from consideration of change on a case-by-case basis.

Using that approach, I find here no justification for the change the court is making. The alleged victim is not a child of tender years; she was competent to testify and did testify. There were other witnesses who were available to testify and who did in fact testify. There was simply no necessity for the government to rely on the testimony of Mrs. Allery. Indeed her testimony was largely cumulative and in my opinion was highly prejudicial simply because she was the wife of the accused. *See United States v. Redstone,* 488 F.2d 300, 305 (8th Cir. 1973).

Assuming, without deciding, that a stronger case for exception to the marital privilege might be made where the alleged victim is an incompetent witness and no reliable witness other than a spouse of the accused is available, nei-

---

7. *See e. g., Indiana,* I.C. 12–3–4.1–5 (1971); *Iowa,* I.C.A. § 235A.8 (1965); *Kentucky,* K.R.S. 199.335(5) (1964); *Louisiana,* L.S.A.–R.S. 14:403, subd. F (1964); *Michigan,* M.C.L.A. 600.2162 (1961); *Minnesota,* M.S.A. § 595.02 (1969); *Nebraska,* R.S.Supp., 1974, 28–1505; *New Hampshire,* R.S.A. 169:43 (Supp.) (1973);

*North Dakota,* N.D.C.C. § 50–25–05 (1965), *repealed and supplemented by* § 50–25.1–10, (1975); *South Dakota,* S.D.C.L. 19–2–1 (1967); *Washington,* R.W.C.A. 5.60.060 (1965).

1. N. 7,[7] majority opinion.

2. Majority opinion, p. 1366.

ther reason nor experience dictates broad abandonment of the privilege simply because a "child" of any age or condition is the alleged victim. The reason for change is no more compelling with respect to some children than with respect to some grandchildren, cousins, or social guests.

I would reverse and remand for a new trial.

