# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1489
_____

United States of America,

*Plaintiff - Appellant*,

v.

Donavan Jay White Owl, also known as DJ,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: February 18, 2022
Filed: July 5, 2022

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Donovan White Owl is charged in the district court with arson and felony murder after allegedly starting a cabin fire that killed an occupant of the dwelling. White Owl moved *in limine* to prevent the government from introducing incriminating statements that he made to his wife in private after the fire. The district court granted the motion based on the marital communications privilege. The court

concluded that a spousal-victim exception to the privilege did not apply, because White Owl's spouse was not a victim of the charged offenses. The government appeals, and we conclude that a related exception applies—one that vitiates the privilege in a case where a spouse is charged with a crime against a third person that is committed in the course of committing a crime against the defendant's spouse. We therefore reverse the order excluding the testimony of White Owl's spouse.

I.

White Owl and Tera Cooke have been married since May 2014. On the night of April 3-4, 2019, White Owl and Cooke were at a bonfire with friends Cody Serdahl and Winnifred Smith. All four were living in a cabin in Mandaree, North Dakota, that belonged to Serdahl's mother. The bonfire was in the yard outside the dwelling.

During the gathering, White Owl started to yell at Cooke during an argument. Serdahl intervened and told White Owl to stop yelling. After that exchange, White Owl concluded that Cooke was having an affair with Serdahl. Cooke left the bonfire and hid from White Owl in the back of their Chevrolet Tahoe vehicle. Shortly thereafter, the cabin burned down, and Smith was killed in the fire.

White Owl entered the Tahoe and drove away without realizing that Cooke was hiding in the back. White Owl eventually discovered Cooke when he stopped for gas in Circle, Montana, about 150 miles from the cabin.

Some time thereafter, when the two were alone together, White Owl made incriminating statements to Cooke. White Owl said that he thought she was inside the cabin after their argument at the bonfire, so he decided to pour gasoline through the bedrooms, kitchen, stairs, and deck of the cabin. He told Cooke that he poured the gasoline because he believed that she was hiding in the cabin. He said that he took this action because he thought Cooke was sleeping with Serdahl.

A grand jury charged White Owl with arson within Indian country, *see* 18 U.S.C. §§ 81, 1153, and felony murder within Indian country based on the death of Winnifred Smith. *See* 18 U.S.C. §§ 1111, 1153. In preparation for trial, White Owl moved *in limine* to exclude any private communications to Cooke, including his statement that he poured gasoline in and around the cabin, on the basis that they were privileged marital communications. The government urged the court to recognize an exception to the privilege for a criminal case in which one spouse commits a crime against the other spouse.

The district court granted White Owl's motion and declared inadmissible any communications that were "made in confidence" between the spouses. The court concluded that even if there should be a spousal-victim exception to the marital communications privilege, it would not apply in this case. The court reasoned that Cooke was not a victim of the charged arson, because she did not have any "discernable personal effects in the home" and did not own the home. The court found that White Owl confessed to Cooke in an attempt at reconciliation, and that the marital communications privilege "ought to guard those communications as inherent to protecting and supporting the marital relationship."

The government unsuccessfully moved for reconsideration and then brought this interlocutory appeal. *See* 18 U.S.C. § 3731. We consider questions concerning the scope of an evidentiary privilege *de novo*. *United States v. Ghane*, 673 F.3d 771, 779-80 (8th Cir. 2012).

II.

This case involves the privilege for confidential marital communications. "The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of

-3-

justice." *Wolfle v. United States*, 291 U.S. 7, 14 (1934). As one court long ago explained, the policy behind the privilege is "to preserve family peace and maintain that full confidence which ought to subsist between husband and wife." *Pringle v. Pringle*, 59 Pa. 281, 288 (1868). The privilege ordinarily "prohibits testimony concerning intra-spousal, confidential communications arising from the marital relationship." *United States v. Allery*, 526 F.2d 1362, 1365 (8th Cir. 1975); *see United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992).

The common law, as interpreted by the federal courts in light of reason and experience, governs a claim of privilege. Fed. R. Evid. 501; *see Trammel v. United States*, 445 U.S. 40, 47 (1980). Therefore, we have said that federal courts must "examine the policies behind the federal common law privileges" and "alter or amend them when 'reason and experience' so demand." *Allery*, 526 F.2d at 1366.

The government on appeal identifies several potential exceptions to the marital communications privilege that have been recognized in the following circumstances: (1) where a spouse commits a crime against the person or property of the other spouse (the spousal-victim exception), (2) where a spouse is charged with a crime against a child of either spouse or a child under the care of either (the minor-child exception), (3) where a spouse is charged with a crime against a person residing in the household of either spouse (the same-household exception), and (4) where a spouse is charged with a crime against a third person committed in the course of committing a crime against the other spouse (the third-person/spousal-victim exception). The government's briefing is focused on what the government calls a spousal-victim exception and argues that Cooke was a victim of the arson offense charged against White Owl. But in arguing that an exception also applies even if the victimized spouse is not a victim of a charged offense, the government's brief effectively raises the third-person/spousal-victim exception without naming it as such. Appellant's Br. 37-42.

We need not address all of the enumerated exceptions, because we conclude that the third-person/spousal-victim exception is well grounded in reason and experience, and is applicable here. The Model Code of Evidence (adopted by the American Law Institute) and the Uniform Rules of Evidence (promulgated by the Uniform Law Commission) include this exception. Model Code of Evid. § 216 (Am. L. Inst. 1942); Unif. R. Evid. 504 (Unif. L. Comm'n 2005); *see* 8 J. Wigmore, *Evidence* § 2338, at 665 & n.1 (McNaughton rev. 1961). At least eighteen States have adopted it. Ala. R. Evid. 504; Ark. R. Evid. 504; Cal. Evid. Code § 985; Del. R. Evid. 504; Haw. R. Evid. 505; Idaho R. Evid. 504; Kan. Stat. Ann. § 60-428; Ky. Rev. R. Evid. 504; Me. R. Evid. 504; Miss. R. Evid. 504; N.M. R. Evid. 11-505; N.D. R. Evid. 504; Okla. Stat. tit. 12, § 2504; Or. Rev. Stat. § 40.255; S.D. Codified Laws § 19-19-504; Utah R. Evid. 502; Vt. R. Evid. 504; Wis. Stat. § 905.05.

We think the conclusion of these authorities is sound. The marital communications privilege obstructs the truth-seeking process, so it should be construed carefully in a criminal case where society has a strong interest in the administration of justice. *See Trammel*, 445 U.S. at 50-51; *Allery*, 526 F.2d at 1366. If the purposes of the privilege are not well served by its application, then the prohibition on receiving relevant evidence should yield.

That is the situation here. When one spouse is charged with committing a crime against a third person while committing a crime against the other spouse, marital peace, unity, and stability have already been undermined: "there is probably little in the way of marital harmony for the privilege to preserve." *Trammel*, 445 U.S. at 52. Other circuits have applied an exception to the marital communications privilege where one spouse is charged with perpetrating a crime against a child of either spouse or a child in the marital home, on the view that the interests of justice in that circumstance outweigh the goal of fostering marital harmony. *United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992); *United States v. Breton*, 740 F.3d 1, 11-12 (1st Cir. 2014); *United States v. Bahe*, 128 F.3d 1440, 1446 (10th Cir. 1997).

We reach the same conclusion where a spouse is charged with a crime against a third person that is committed in the course of victimizing the other spouse. Although the alleged crime against a third person may not imperil the family unit in the same way as a charged crime against the other spouse or a child of either, *see* 2 Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges* § 6.13.5, at 1613-15 (4th ed. 2022), the third-person/spousal-victim exception also requires a showing that the charged crime was committed in the course of committing a crime against the other spouse. As with the case where one spouse is willing to testify against the other regarding facts other than private communications, excluding testimony about marital communications from a spouse who has been victimized by her spouse's crime "seems far more likely to frustrate justice than to foster family peace." *Trammel*, 445 U.S. at 52. In our view, the interests of justice in receiving relevant evidence of crime outweigh the goal of fostering whatever might remain of marital unity and harmony in these circumstances.

Where the record supports invocation of the third-person/spousal-victim exception, the crime against the other spouse need not be formally charged. *See State v. G.B.*, 656 N.W.2d 469, 470, 473-74 (Wis. Ct. App. 2002); *see also People v. Sinohui*, 47 P.3d 629, 630-32, 639 (Cal. 2002) (considering marital adverse testimony privilege). Indeed, this court applied an exception to the marital adverse testimony privilege where the defendant committed an offense against his spouse in the course of a charged drug trafficking offense that had no identifiable victim. *United States v. Smith*, 533 F.2d 1077, 1078-79 (8th Cir. 1976) (per curiam). As with the adverse testimony privilege, we do not believe the defendant who is charged with a crime committed in the course of victimizing his spouse should be "permitted to prevent his wife from testifying to the crime by invoking an interest founded on the marital relation or the desire of the law to protect it." *Wyatt v. United States*, 362 U.S. 525, 527 (1960); *see* Wigmore, *supra*, § 2239, at 243. We agree with Judge Clark's observation in *United States v. Walker*, 176 F.2d 564 (2d Cir. 1949), that because the reason for the marital communication privilege is "the promotion of marital peace,"

where a husband is charged with an offense against a third person in the course of committing a crime of similar character against his wife, "we must recognize that the reason for the exclusion is now gone entirely, put an end to by the husband's acts." *Id*. at 568 (Clark, J., dissenting).

The record shows that White Owl's statements to Cooke fall within the third-person/spousal-victim exception. For purposes of resolving the preliminary question of privilege under Federal Rule of Evidence 104(a), it is sufficient for the government to make a *prima facie* showing that an exception applies. *Clark v. United States*, 289 U.S. 1, 14-15 & n.1 (1933); *In re Berkley & Co., Inc.*, 629 F.2d 548, 553 (8th Cir. 1980). That showing in the trial context requires no more than a preponderance of the evidence, *see Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *In re Napster, Inc., Copyright Litig.*, 479 F.3d 1078, 1095-96 (9th Cir. 2007), and that standard is satisfied here.

White Owl is charged with arson and felony murder against third persons, Serdahl and Smith. White Owl allegedly committed these charged offenses in the course of committing an offense against his wife, Cooke. The district court found that White Owl told Cooke that he poured gasoline in and around the cabin, and that White Owl admitted he was trying to kill Cooke. R. Doc. 110, at ¶¶ 5, 21, 23; R. Doc. 120, at ¶ 8. Those findings are supported by the record. *See* R. Doc. 56-1, at 3. For purposes of a preliminary determination, they show the essence of attempted murder of the spouse: intent to kill and an overt act qualifying as a substantial step toward completion of the offense. *See* 18 U.S.C. § 1113; *Braxton v. United States*, 500 U.S. 344, 349 (1991); *United States v. Contreras*, 950 F.2d 232, 237 (5th Cir. 1991) ("Factual impossibility is not a defense if the crime could have been committed had the attendant circumstances been as the actor believed them to be."). Accordingly, the privilege for confidential marital communications does not preclude Cooke from testifying about White Owl's admissions.

We recognize that the government's briefing in the district court focused on what it called a spousal-victim exception, argued that Cooke was a victim of the charged arson, and adverted specifically to the third-person/spousal-victim exception only briefly in its motion for reconsideration. R. Doc. 115, at 12. We have discretion, however, to consider a new issue on appeal if it is purely legal and requires no additional factual development. *See United States v. Hirani*, 824 F.3d 741, 751 (8th Cir. 2016). The district court here made the relevant factual findings, and the scope of an evidentiary privilege is a legal question. *Ghane*, 673 F.3d at 779-80. In our view, the significant interest in correctly defining an evidentiary privilege for the proper administration of justice warrants our exercise of discretion to address the issue. *See United States v. Bahe*, 128 F.3d at 1445.

\* \* \*

For these reasons, we reverse the order of the district court excluding Cooke's testimony about communications with the defendant White Owl.

_____