UNITED STATES of America, Appellee,

v.

**David Dean PRINE, Appellant,**

**UNITED STATES of America, Appellee,**

v.

**Michael Dean FREEMAN, Appellant.**

**Nos. 89–2239, 89–2240.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1990.

Decided July 18, 1990.

Rehearing and Rehearing En Banc
Denied Aug. 21, 1990.

Jon B. Schuster, Des Moines, Iowa, for appellant Prine.

Alfredo Parrish, Des Moines, Iowa, for appellant Freeman.

Linda R. Reade, Des Moines, Iowa, for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Defendants David Prine and Michael Freeman were convicted of conspiring to manufacture marijuana in violation of 21 U.S.C. § 846; of manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2; and of use of firearms in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 2 and 924(c)(1). The district court[1] sentenced Freeman to 72 months' imprisonment and 140 hours of community service. Prine was sentenced to 90 months' imprisonment and 160 hours of community service. Both

defendants have appealed. We affirm the convictions, but remand for resentencing consistent with our recent decision in *United States v. Streeter*, 907 F.2d 781 (8th Cir.1990).

## I. THE ARREST

In July, 1988, law enforcement officers received an anonymous tip that marijuana was being grown on property owned by defendant Freeman's father near Bondurant, Iowa. Officers observed defendant Prine leaving the property on two occasions in August, 1988. Officers observed defendant Freeman on the property on September 11, 1988. Freeman told officers, who were posing as neighbors, that he visited the property nearly every morning.

On September 13, 1988, officers arrived at the property and found a blue four-door Dodge station wagon parked at the entrance of the path leading to the marijuana patch. Detective Burdock testified that he looked through the windows of the vehicle to check for weapons, but did not see any. All doors and windows to the vehicle were closed. Defendants Freeman and Prine were observed tending the marijuana patch.

After Freeman and Prine walked up the path from the marijuana patch, Freeman was arrested by Agent Arduser. Arduser found a loaded .38 caliber revolver on Freeman's person. When Prine was arrested, he was standing next to the Dodge station wagon. The rear door of the vehicle was open, and on the floor of the car, next to where Prine was standing, officers found a loaded .22 caliber firearm and a knife.

## II. THE FIRST TRIAL

At the first trial, defense counsel for both Prine and Freeman conceded in their opening statements that the defendants knew about the marijuana and were growing it for their own personal use. Defense counsel both framed the case for the jury as one involving solely the question of

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa.

whether any weapons were being used in connection with drug trafficking. During the trial, defendants stipulated to evidence that government agents observed both Prine and Freeman on the property and seized 28 marijuana plants from the property after their arrest. Neither defendant took the stand to testify on his own behalf.

In closing arguments, counsel for Freeman again reiterated Freeman "had absolutely no dispute with regard to the marijuana, absolutely no dispute." Freeman's counsel argued, however, that there was no evidence Freeman used the weapon found in his possession in connection with any drug trafficking. Prine's counsel told the jury "[t]his is a one-issue case, and the fighting issue is whether Defendant Prine, or for that matter, Defendant Freeman, used or carried those guns in relation to the crime of manufacturing marijuana." He concluded: "It's a very simple case, ladies and gentlemen. I wish you would keep it that way when you're deliberating this case insofar as these two have come forward and essentially and effectively have admitted possession of the marijuana."

In response, counsel for the government stated:

> Both defense counsel have chided me for not bringing the witness that can say these guys carried these guns in relation to a drug trafficking crime. I can't do that. There's only two people who know what their intent was on that day, and they're sitting in this courtroom.

Counsel for both defendants immediately objected and moved for a mistrial. The court reserved ruling pending the jury verdict.

The jury found defendants guilty of all three counts. The trial judge subsequently granted a mistrial as to the firearms count, finding the prosecutor's remark was a direct comment on defendants' failure to testify. The court denied defendants' motion for a mistrial on the conspiracy and marijuana manufacturing counts, reasoning that the prosecutor's remark had no connection with these counts and could not have affected the jury's verdict because defendants had in effect conceded their guilt as to these charges.

## III. THE SECOND TRIAL

Defendants were retried on the firearms count alone. During the selection of the jury, the government exercised its peremptory challenges to strike four white, one Hispanic, and one black venireperson. Defendants are white. Defendant Prine's counsel is white. Defendant Freeman's counsel is black. Both defendants argued the government's use of its peremptory challenges violated their right to equal protection as articulated by the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The prosecutor contended that defendants had failed to make a prima facie showing under *Batson*. Preserving her position that no prima facie case had been established, the prosecutor also explained her reasons for striking the jurors she did. The district court agreed with the government that defendants had failed to make a prima facie showing of purposeful discrimination.

During the second trial, Freeman's father testified that the .38 caliber weapon found on defendant Freeman's person belonged to his son, but the .22 caliber weapon found in the car did not. Other witnesses testified Freeman used guns for hunting and target shooting. Freeman's defense was that he was growing the marijuana for his personal use and was not using the .38 caliber weapon in any way in connection with the marijuana patch. Defendant Prine took the stand at the second trial and admitted that he and Freeman were growing the marijuana as 50–50 partners. Prine acknowledged that he had previously touched the .22 caliber weapon, but denied he had possession of it on the day of the arrest.[2] Prine's defense was that he had nothing to do with the .22 caliber weapon.

The jury again convicted both defendants of the firearms count.

**2.** Prine was a convicted felon and could not lawfully possess or carry a weapon.

## IV. SENTENCING

After a hearing at which both defendants testified, the court determined defendant Freeman had an offense level of 12 based on the seizure of 28 marijuana plants. With a criminal history category of I, Freeman's guideline range was 12 to 18 months. The court sentenced Freeman to 12 month concurrent sentences on the marijuana manufacturing and conspiracy counts. Prine's guideline range for the marijuana counts was 30 to 37 months, based on an offense level of 12 and a criminal history category of IV. Prine received 30 month concurrent sentences on the marijuana manufacturing and conspiracy counts. The court imposed the 5 year statutory minimum sentence for both defendants on the firearms charge, to run consecutively to the marijuana sentences. *See* 18 U.S.C. § 924(c)(1).

Both defendants have appealed. Defendants argue the court erred in refusing to grant a mistrial as to all counts in the first trial. Defendants further argue they established a prima facie case under *Batson*. Defendant Prine challenges the indictment; contends the evidence was insufficient to convict him; and argues the court erred in imposing sentence.

## V. MISTRIAL ON COUNTS 1 AND 2

The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir.1985). We agree with the district court that the prosecutor's comments in this case were improper and amounted to a direct comment on the defendants' failure to testify with regard to their use of firearms, as charged in count 3 of the indictment. We also agree with the court's conclusion that the comments deprived the defendants of a fair trial on count 3.

Defendants argue on appeal that the comments required a new trial on counts 1 and 2, the conspiracy and manufacturing counts. We cannot agree. Defendants effectively conceded their guilt on counts 1 and 2 at the first trial. The evidence, which was admitted by stipulation, was overwhelming as to their guilt on these counts. The court found the prosecutor's remarks were inadvertent and were directed only to count 3. Under these circumstances, the improper comments did not deprive defendants of a fair trial on counts 1 and 2. *See United States v. Kragness*, 830 F.2d 842, 869–70 (8th Cir.1987); *Hernandez*, 779 F.2d at 460–61.

## VI. *BATSON* ISSUE

Exclusion of black citizens from service as jurors on the basis of their race "constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." *Batson v. Kentucky*, 476 U.S. 79, 85, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (1986). Racial discrimination in selection of jurors deprives the accused of the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria, and discriminates against jurors who are excluded because of their race. *Id.* at 87, 106 S.Ct. at 1718. The harm extends beyond the accused and the excluded juror

> to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.

*Id.*

In this case, the prosecutor used her sixth peremptory strike to exclude a single black woman, age 33, who was the only black person in the jury panel. The resulting petit jury had no black members. The government argues defendants Freeman and Prine, who are white, have no standing to challenge the striking of a black juror on equal protection grounds. In *United States v. Brown*, 817 F.2d 674 (10th Cir. 1987), the Tenth Circuit concluded the government's peremptory strikes violated the equal protection clause test set forth in *Batson* because the prosecutor assumed black venirepersons would acquit the defendant because his counsel was black. *Id.*

at 676. In this case, defendant Freeman's counsel is black.

■ More important, however, is the principle articulated by Justice Kennedy in his concurring opinion in *Holland v. Illinois,* —— U.S. ——, 110 S.Ct. 803, 811–12, 107 L.Ed.2d 905 (1990), that defendants of any race have standing in their own trial to challenge a juror's exclusion on equal protection grounds. We agree that a defendant's race "is irrelevant to the Fourteenth Amendment standing inquiry," *id.* at 814 (Marshall, J., dissenting), *see id.* at 811–12, and reject the government's position that defendants Freeman and Prine cannot raise an equal protection claim. *See United States v. Dawn,* 897 F.2d 1444, 1448 n. 4 (8th Cir.1990).

*Batson* stands for the proposition that the striking of a single black juror for racial reasons violates the equal protection clause. *Dawn,* 897 F.2d at 1448; *United States v. Johnson,* 873 F.2d 1137, 1139 (8th Cir.1989) (citing *United States v. Battle,* 836 F.2d 1084, 1086 (8th Cir.1987)). Under *Batson,* once the defendant establishes a prima facie case of purposeful discrimination, the burden shifts to the government to come forward with a neutral explanation for challenging black jurors. *Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723–24; *Johnson,* 873 F.2d at 1140.

■ In this case, the district court found defendants had not made a prima facie showing based on its observations during the jury selection. Our review has not convinced us this finding is clearly erroneous. *See Dawn,* 897 F.2d at 1447–49. In articulating her reasons for using her peremptory strikes generally, the prosecutor stated she was attempting to strike young, unmarried persons, who might be more inclined to be in a social environment and/or to have a liberal attitude towards drugs. These reasons, and the composition of the panel ultimately selected (which included married and/or older persons) lend support to the district court's finding that no equal protection violation occurred. *See general-*

*ly Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. Defendants' *Batson* challenge must, therefore, be rejected.

## VII. PRINE'S CONTENTIONS

Defendant Prine makes several additional arguments, which may be dealt with summarily. It is clear that the indictment against him was proper, that the evidence against him was sufficient to convict him of all three counts, and that the district court did not err in excluding a written definition of "marijuana" from the United States Dispensary (25th edition). Prine's arguments that the district court erred in determining his sentence under the Guidelines are equally without merit. The court has great discretion in determining whether to grant a two level reduction for acceptance of responsibility and we find no basis in the record which would justify a downward departure from the Guideline range in this case. The jury found that Prine used the .22 caliber weapon in connection with drug trafficking and the parties stipulated that 28, not 20, plants were seized from the marijuana patch.

■ We nonetheless conclude that the sentences of both defendants should be vacated in light of our recent opinion in *United States v. Streeter,* 907 F.2d 781 (8th Cir.1990). At the trial in this matter, both defendants effectively admitted their involvement in growing the marijuana seized by the government, but took issue with the amount of marijuana involved. Defendants' expert witness (a botanist) testified that in his opinion the seized plants represented 3.5 pounds of smokable product.

The district court responded to defendant Prine's renewal of this argument at sentencing by noting that "the guidelines refer to the number of plants ... rather than the pounds." The court sentenced both defendants using the Guidelines' Drug Quantity Table equivalency of 1 plant equals 100 grams. *See* Guideline 2D1.1(a)(3) at pages 2.39 & 2.43 (revised 1988 version).[3] In *Streeter,* this Court held the Drug Equiva-

---

3. The seizure of 28 plants thus equalled 2,800 grams or 2.8 kilograms (approximately 6 pounds).

lency Table was invalid to the extent that it automatically equated one marijuana plant with 100 grams. *Streeter,* at 791. The government conceded in that case that the 100 gram equivalency was arbitrarily selected by the Guidelines Commission.

Because *Streeter* requires that the actual weight of the plants must be used to determine the offense category when less than 50 plants are involved, this court will vacate the sentences of both defendants on counts 1 and 2 and remand for resentencing. On remand actual weight, rather than the number of plants, should be used for sentencing purposes. *See Streeter,* at 791.

## VIII. CONCLUSION

For all of the foregoing reasons, the convictions of defendants Prine and Freeman are affirmed, but their sentences are vacated, and the cases are remanded to the district court for resentencing consistent with this Court's decision in *United States v. Streeter,* 907 F.2d 781 (8th Cir.1990).