**398**

UNITED STATES of America, Appellee,

v.

Jack EVANS, Appellant.

UNITED STATES of America, Appellee,

v.

Rhonda Michelle DeWITT, Appellant.

UNITED STATES of America, Appellee,

v.

Bruce Kelly EVANS, Appellant.

UNITED STATES of America, Appellant,

v.

Jack EVANS, Appellee.

UNITED STATES of America, Appellant,

v.

Rhonda Michelle DeWITT, Appellee.

UNITED STATES of America, Appellant,

v.

Bruce Kelly EVANS, Appellee.

Nos. 91–2481, 91–2482, 91–2506, 91–2533, 91–2537 and 91–2540.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1991.

Decided June 5, 1992.

Rehearing and Rehearing En Banc
Denied July 15, 1992.

Christopher R. Pose, Des Moines, Iowa, argued, for appellant/cross-appellee Jack Evans.

Jeffrey L. Goodman, Des Moines, Iowa, argued, for appellant/cross-appellee Rhonda Michelle DeWitt.

F. Montgomery Brown, Des Moines, Iowa, argued (Timothy McCarthy II, on the brief) for appellant/cross-appellee Bruce Evans.

Lester Alan Paff, Des Moines, Iowa, argued (Gene W. Shepard and Lester A. Paff, on the brief) for appellee/cross-appellant U.S.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Jack Evans, his brother Bruce Evans, and their sister Rhonda DeWitt were convicted of conspiring to manufacture and distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. In addition, Bruce Evans was convicted of two firearms offenses in violation of 18 U.S.C. §§ 922(g) and 924. All three appeal their convictions and sentences. We affirm Jack and Bruce Evans's convictions and sentences. We also affirm DeWitt's conviction, but we remand her case to the district court for resentencing.

## I.

The government introduced the following evidence at trial: On May 4, 1989, Cindy Evans shot her husband, Bruce Evans, in the face. When the police arrived to investigate the shooting, Cindy Evans told them that her husband was involved in the manufacture and sale of marijuana. The police then obtained a search warrant for Bruce Evans's house. Upon executing the warrant, they seized marijuana, marijuana paraphernalia, a pistol, and several incriminating documents and photographs. The subsequent investigation revealed that Bruce Evans, along with several other people including his co-defendants, ran an elaborate operation setting up marijuana "grow houses." Bruce Evans recruited growers and sold them the necessary equipment, and Jack Evans would help them harvest the marijuana. Rhonda DeWitt, one of several growers, maintained marijuana plants at her home. After the growers harvested the marijuana, Bruce Evans would collect and sell the finished product.

## II.

Appellants raise several arguments on appeal, three of which merit discussion.[1]

### A.

■ Bruce Evans contends that the district court erroneously admitted five photographs that depict several aspects of Evans's marijuana growing operation. One picture shows him sitting at a table covered with marijuana; another features a large number of marijuana plants. The police uncovered the photographs in a box in a closet during their search of Evans's house pursuant to a valid search warrant. Evans argues that because the warrant did not specifically authorize the police to seize the photographs, the district court should have excluded them at trial. Evans claims that the photographs do not fall within the "plain view" doctrine because once the police realized that the box did not contain any of the items listed on the search warrant, they should have closed the box without looking at the photos.

■ The "plain view" doctrine permits police to seize an item not specified on a search warrant if the police are lawfully in a position to observe the item and its incriminating character is immediately apparent. *Horton v. California*, 496 U.S. 128, 136–38, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112, 123. "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971) (plurality opinion). The above scenario describes the exact circumstances that led police to seize the photographs in this case. The search warrant for Bruce Evans's house authorized the police to seize, among other things, drugs and drug paraphernalia, either of which could have been stored in a box in a closet. The police were, therefore, acting within the scope of the warrant when they opened the box containing the photos. Moreover, the incriminating nature of photos picturing Bruce Evans with large quantities of marijuana must have been immediately apparent to the officer who opened the box. The photographs were, therefore, lawfully seized and admissible at trial.

### B.

■ Bruce Evans also argues that some of Cindy Evans's testimony disclosed confidential marital communications and should have been excluded. On direct examination, Cindy Evans testified that she was personally involved in the growing and selling of marijuana with her husband. She stated that she purchased the potting soil for the operation on two or three occasions; drove Bruce Evans around three or four times when he was selling the marijuana; and helped to dry the marijuana in the microwave oven five or six times. In Cindy Evans's own words, "I was there. I mean, I was part of all of it because I was aware of what was going on." On redirect examination, Cindy Evans revealed several things that Bruce Evans had told her about the operation, chief among them that Bruce Evans was the "king" of the conspiracy.

---

1. Appellants have also raised the following issues: Whether there was sufficient foundation to admit photographs found in Bruce Evans's house, and whether the court should have given a limiting instruction with respect to the photographs; whether the district court should have granted Bruce Evans's motion for a new trial; whether the testimony of Jack Evans's wife, Colleen Evans, was protected by the marital confidential communications privilege; whether the district court erred in admitting hearsay testimony of Cindy Evans that did not directly involve the conspiracy; whether the district court should have granted Jack Evans's motion to sever, his motion for judgment of acquittal, and his motion for a new trial; whether the district court should have excluded testimony of witnesses whose identity was made known to the defendants four days before trial; whether the district court should have granted Rhonda DeWitt's motion for a new trial, motion to sever, and motion for judgment of acquittal; and whether the court erred in admitting testimony of Cindy Evans regarding statements made by Rhonda DeWitt. Bruce Evans and Jack Evans also appeal their sentences on several grounds. We have considered each of these arguments carefully, and have determined that none of them merits discussion.

She also testified as to the content of private conversations in which Bruce Evans had told her about the other people involved in the conspiracy and their respective roles.

■ The marital confidential communications privilege prohibits testimony regarding private intra-spousal communications.[2] See *United States v. Lilley*, 581 F.2d 182, 189 (8th Cir.1978). The privilege extends only to words or acts that are intended as a communication to the other spouse. See *Pereira v. United States*, 347 U.S. 1, 6–7, 74 S.Ct. 358, 361–62, 98 L.Ed. 435 (1954); *United States v. Smith*, 533 F.2d 1077 (8th Cir.1976). The communication must also occur during a time when the marriage is valid under state law and the couple is not permanently separated. *United States v. Jackson*, 939 F.2d 625, 627 (8th Cir.1991); *Unites States v. Lustig*, 555 F.2d 737 (9th Cir.1977), *cert. denied*, 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977) and 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978). Finally, the communication must be made in confidence; in other words, it cannot be made in the presence of a third party, and the communicating spouse cannot intend for it to be passed on to others. *United States v. McConnell*, 903 F.2d 566, 572 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1011, 112 L.Ed.2d 1093 (1991) and 111 S.Ct. 1393 (1991). Once these three prerequisites are met, a defendant may invoke the privilege to prevent his spouse from testifying as to the content of the protected communication. See *2 Weinstein's Evidence* § 505[04] (1991). This privilege continues even after the marriage has ended. *Id.*

A widely accepted exception to the marital confidential communications privilege "permits witness-spouse testimony about confidential communications involving future or ongoing crimes in which the spouses were joint participants *at the time of the communications.*" *2 Weinstein's Evidence* 505–36 (1991). The rationale for the "partners in crime" exception is compelling. We protect confidential marital communications in order to "encourage the sharing of confidences between spouses." *Id.* at 505–28. Where the communications involve the spouses' joint criminal activity, however, the interests of justice outweigh the goal of fostering marital harmony.

■ Every circuit that has considered the partners in crime exception to the marital confidential communications privilege has adopted it in one form or another. See *id.* at 505–38 n. 15. While this court has not yet had an opportunity to adopt this exception, we do so now. We agree with the Sixth Circuit, however, that the exception should be limited to communications regarding "patently illegal activity." *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir.1985), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985). As the Sixth Circuit stated,

> [b]y narrowly construing the exception, we are attempting to protect the privacy of marriage and encourage open and frank marital communications. Only where spouses engage in conversations regarding joint ongoing or future patently illegal activity does the public's interest in discovering the truth about criminal activity outweigh the public's interest in protecting the privacy of marriage.

*Id.; see also* Note, *The Future Crime or Tort Exception to Communications Privileges*, 77 Harv.L.Rev. 730, 734 (1964) (advocating application of the partners in crime exception only to communications regarding activity that is "on its face unlawful.").

Cindy Evans's testimony regarding her conversations with Bruce Evans meets the three requirements of the marital confidential communications privilege. Through his statements, Bruce Evans intended to communicate information to Cindy Evans about his co-conspirators and about his status as "king" of the conspiracy; the Evans's marriage was legally valid at the time of the communications, and the couple was still living together at that time; and Bruce Evans made the statements to his wife in confidence. Based on her testimony on direct examination, however, Cindy Evans

---

**2.** This privilege is distinct from the anti-marital facts privilege, which is not applicable here. *See United States v. Lilley*, 581 F.2d 182, 189 (8th Cir.1978).

clearly was a participant with her husband in his patently illegal ongoing conspiracy to grow and sell marijuana. Any communications that the couple had about the operation, therefore, fall within the partners in crime exception outlined above and are not privileged.

### C.

◼◼◼ Rhonda DeWitt contends that the district court erred in assigning her an offense level of twelve, based on the court's determination that she was responsible for four kilograms of marijuana. Under the sentencing guidelines, a defendant's sentence is based on the weight of the marijuana for which she was responsible. If the defendant was responsible for less than fifty marijuana plants, the commentary to guideline 2D1.1 instructs the sentencing court to "treat each plant as equivalent to 100 G of marijuana. *Provided*, however, that if the actual weight of the marijuana is greater, use the actual weight of the marijuana." In *United States v. Prine*, 909 F.2d 1109, 1113–14 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991) and —— U.S. ——, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991), and *United States v. Streeter*, 907 F.2d 781, 789–91 (8th Cir.1990), however, this court held that in cases involving less than fifty plants, the district court may not use the one plant/100 grams conversion. Instead, it must calculate the sentence based only on the actual weight of the marijuana involved.[3]

At the sentencing hearing in this case, the district court stated that

> [i]n the case of Rhonda Michelle DeWitt, the probation office found, based largely on the testimony of [Cindy] Evans, that

she should be responsible for 25 marijuana plants. And the government—the probation office then used the equivalency of 100 grams per plant. I find that under the *Streeter* and *Prine* cases that there may be infirm. I find that the finding itself in the report that she is responsible for less than 50 marijuana plants is correct. I believe that she should be responsible for 40 plants, which would have been her part in the manufacturing of marijuana.

Despite its recognition of *Streeter* and *Prine*, the district court proceeded to multiply the forty plants by 100 grams per plant in order to arrive at DeWitt's offense level of twelve. Nothing in the record supports the district court's independent determination that DeWitt's plants weighed 100 grams each. Moreover, the government admits that the actual weight of the plants is unknown. We therefore remand DeWitt's case for resentencing based on a more precise determination of the amount of marijuana involved.

The convictions and sentences of Bruce Evans and Jack Evans are affirmed. Rhonda DeWitt's conviction is affirmed, but her case is reversed and remanded for resentencing consistent with this opinion.

◼◼◼◼◼◼◼◼◼

---

**3.** Perhaps to allay the concerns that we expressed in *Streeter, supra*, the Sentencing Commission amended the commentary to section 2D1.1 of the guidelines. The amended commentary, effective November 1, 1991, states that "[t]he decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana." This amendment was not in effect at the time of DeWitt's

sentencing, and we will not apply it retroactively to this case. *See United States v. Dortch*, 923 F.2d 629, 632 n. 2 (8th Cir.1991). We express no opinion regarding the effect of the amended commentary on the validity of the equivalency formula. *See United States v. Stinson*, 957 F.2d 813, 815 (11th Cir.1992) (declining to reverse previous interpretation of guideline based on a change in guideline commentary).