# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1343
_____

United States of America,

*Plaintiff - Appellee,*

v.

Julia Lagunas Hernandez,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 15, 2021
Filed: June 9, 2021
_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

A jury convicted Julia Lagunas Hernandez of conspiracy to distribute methamphetamine and distribution of methamphetamine. The district court[1]

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

sentenced Lagunas to a term of 156 months' imprisonment. Lagunas appeals, arguing that improper prosecutorial argument deprived her of a fair trial, that the district court erred by admitting text messages that were protected by the marital communications privilege, and that the court miscalculated the advisory sentencing guideline range. We conclude that there was no reversible error, and affirm the judgment.

I.

The government's case against Lagunas centered on her role in a drug trafficking trip between California and Iowa. On February 11, 2019, Lagunas met Carlos Rojas Medrano at a train station in Sacramento, California. She arrived with her suitcase and a black duffle bag in which three packages of methamphetamine were separately wrapped in clothing. Medrano testified that Maria Alvarez Murillo, a supplier of methamphetamine and the owner of the nightclub at which Lagunas worked, tasked him with training Lagunas as a drug courier. After meeting in the station, Lagunas and Medrano boarded a train to Omaha, Nebraska.

Shortly before arriving in Omaha, Lagunas sent a text message to a man with the initials R.B., whom she now asserts was her husband. Lagunas requested that R.B. arrange a ride for her to a hotel in Grimes, Iowa. When he did not respond, Lagunas sent another text message stating that she would "catch one here" because she could not "be here with this." R.B. then forwarded the address for the hotel to Lagunas. Lagunas used Medrano's phone to arrange a ride to the hotel in Grimes. R.B. told Lagunas that everything was "gonna get charged to me."

In Grimes, Lagunas checked herself and Medrano into a hotel, and then arranged for Alvaro Melena Melena to arrive and pick up the bag containing methamphetamine. A confidential source informed law enforcement of the upcoming methamphetamine handoff. While Lagunas and Medrano were waiting for Melena to arrive, Medrano became suspicious that the police had the hotel under surveillance,

so Lagunas and Medrano hid the methamphetamine underneath a bed in their hotel room.

Lagunas also sent a text message to R.B. stating she would "call [him] in an hour" because people were coming "[f]or the things." R.B. responded that he did not "know what [she was] afraid of," and Lagunas retorted that next time he should "come with [her] and . . . do the deal," and that she was "risking [her] life."

When Melena arrived, Medrano and Lagunas removed the methamphetamine from under the bed and gave the packages to Melena. The police arrested Melena after he left the hotel, and the officers seized approximately 3,933 grams of methamphetamine from him. That evening, police officers arrested Lagunas and Medrano.

A grand jury charged Lagunas with one count of conspiracy to distribute fifty grams or more of methamphetamine and one count of distribution of fifty grams or more of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. She proceeded to trial, and a jury found her guilty on both counts. The district court denied Lagunas's motion for new trial based on alleged improper prosecutorial argument and evidentiary issues. At sentencing, in calculating an advisory guideline range, the court rejected Lagunas's argument for a two-level decrease under USSG § 2D1.1(b)(18) on the ground that she had not truthfully provided the government with all information she had about her offense. *See* USSG § 5C1.2(a)(5). The court then sentenced Lagunas to 156 months' imprisonment.

II.

Lagunas challenges her conviction on the ground that the prosecution's statements in rebuttal deprived her of her right to a fair trial. Because Lagunas did not object during trial, we review for plain error. *United States v. Jewell*, 614 F.3d

-3-

911, 927 (8th Cir. 2010). To obtain relief on this basis, a defendant must show that the prosecution made improper argument that prejudiced her substantial rights. *United States v. Smith*, 978 F.3d 613, 617-18 (8th Cir. 2020).

Lagunas argues that the prosecution improperly shifted the burden of proof to her by arguing that there was no evidence to support her theory that she could have believed that she was going on a "legitimate business trip." In rebuttal, however, the prosecution may give a "fair response" to the defense's attack on the government's case, *United States v. Flynn*, 196 F.3d 927, 930 (8th Cir. 1999), and "the prosecution is entitled to address whether a particular defense explanation of the evidence raises a reasonable doubt." *United States v. Kidd*, 963 F.3d 742, 752 (8th Cir. 2020).

Defense counsel's closing argument urged that the jury should have reasonable doubt because Lagunas might have been duped into believing that she was going on a "work trip." In rebuttal, the prosecution noted that there was no evidence to support such a theory; in other words, the government argued that the defense theory was speculative and not a reasonable explanation of the evidence in the record. The prosecution then pointed the jury to testimony of a coconspirator and text messages that established Lagunas's knowledge of the scheme. In context, the prosecution's argument that there was no evidence to support Lagunas's theory was a fair response and did not shift the burden of proof. *See United States v. Thompson*, 560 F.3d 745, 750-51 (8th Cir. 2009). The court's instruction on the burden of proof, and the prosecution's own reminder to the jury that the burden of proof rested with the government, avoided any potential prejudice. *See United States v. Bentley*, 561 F.3d 803, 810 (8th Cir. 2009); *United States v. Crumley*, 528 F.3d 1053, 1065-66 (8th Cir. 2008).

Lagunas next argues that the prosecution improperly attacked defense counsel by arguing that he was "trying to distract [the jury] from the mountain of evidence against his client," and that he wanted the jury to "forget" the government's evidence.

Lagunas likens her case to *United States v. Holmes*, 413 F.3d 770 (8th Cir. 2005), where a divided panel ruled that there was prosecutorial misconduct in closing argument. But unlike in *Holmes*, the prosecutor's statements here did not "suggest fabrication of testimony" or directly attack the integrity of defense counsel. *See Jewell*, 614 F.3d at 928. The argument instead permissibly expressed "disagreement with defense counsel's view" of the evidence. *Id.*; *see also United States v. Papajohn*, 212 F.3d 1112, 1120 (8th Cir. 2000). The prosecution is entitled to "comment on its interpretation of the evidence," *Jewell*, 614 F.3d at 928, and the government's argument here did not exceed the "considerable latitude" available in rebuttal. *United States v. LaFontaine*, 847 F.3d 974, 981 (8th Cir. 2017) (internal quotation omitted).

Lagunas also challenges her conviction on the ground that the district court erroneously admitted text messages between Lagunas and R.B. She asserts that R.B. was her husband, and relies on the marital communications privilege for "private intra-spousal communications." *United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992).

Assuming for the sake of analysis that Lagunas did not waive (rather than forfeit) any claim of privilege by failing to object to the introduction of the text messages at trial, *see United States v. Vo*, 413 F.3d 1010, 1017 (9th Cir. 2005), we conclude that there was no error. Lagunas failed to produce evidence showing that she and R.B. were married under the law of any State, so she has not established that the messages were sent during a valid marriage. *See Evans*, 966 F.2d at 401; *see also United States v. Hamilton*, 19 F.3d 350, 354 (7th Cir. 1994). She also waived any privilege when she consented to a search of her phone by police. Lagunas entered a password into her phone and voluntarily granted access to the text messages, so she gave up any right to assert that the communications were confidential. *See Wolfle v. United States*, 291 U.S. 7, 16-17 (1934); *United States v. Hamilton*, 701 F.3d 404, 408-09 (4th Cir. 2012); *United States v. Lilley*, 581 F.2d 182, 189 (8th Cir. 1978).

Given these circumstances, it is unnecessary to address whether the communications also fell within the joint criminal activity exception to the privilege. *See Evans*, 966 F.2d at 400-02; *United States v. Parker*, 834 F.2d 408, 413 (4th Cir. 1987).

III.

Lagunas argues that the court erred at sentencing by miscalculating the advisory guideline range. She contends that the court erred in rejecting her argument for a two-level decrease under USSG § 2D1.1(b)(18). That provision applies where a defendant meets the criteria set forth in USSG § 5C1.2(a) that also govern eligibility for a sentence below a statutory minimum.

The district court found that Lagunas did not qualify for the decrease because she did not show that she "truthfully provided to the Government all information and evidence" that she had "concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG § 5C1.2(a)(5). Lagunas told the government that she was unaware that she was transporting methamphetamine until Medrano removed the packages from underneath a bed in the hotel room. The court found that it was "simply unbelievable that [she] did not know what she was trafficking." This finding is amply supported by the record. At trial, Medrano testified that Lagunas knew from the beginning that she was carrying methamphetamine, and that she helped him to hide the drugs in the hotel room. Lagunas's text messages to R.B., including her expressed concern that she was "risking [her] life" on the trip to Iowa, corroborated Medrano's account. The court's credibility findings are virtually unreviewable on appeal, and there was no clear error in denying the two-level decrease.

\* \* \*

The judgment of the district court is affirmed.
_____

-6-