**UNITED STATES of America, Appellee,**

v.

**Frederick Lee JACKSON, Appellant.**

**No. 90–2250EA.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1991.

Decided July 29, 1991.

Rehearing and Rehearing en banc
Denied Sept. 4, 1991.

Larry G. Dunklin, Little Rock, Ark., for appellant.

Brent Bumpers, Little Rock, Ark., for appellee.

Before FAGG and BEAM, Circuit Judges, and DOTY,* District Judge.

FAGG, Circuit Judge.

Frederick Lee Jackson appeals his convictions for bank robbery and use of a firearm in connection with the robbery. Jackson contends the district court abused its discretion in admitting the adverse testimony of his wife, Cynthia Wiggins. We affirm.

Jackson and Wiggins separated in Texas after one year of marriage. Jackson and Wiggins did not cohabit after they separated. Wiggins lived alone in Texas for a year, then moved to Illinois. Sixteen months after the separation, Jackson visited Wiggins while "passing through" Illinois. In response to Wiggins's questions about a bag full of money he possessed, Jackson told Wiggins he had robbed a bank. Two months later Wiggins went to a legal aid office to obtain a divorce. Apparently the divorce was never finalized. Wiggins, however, believed she and Jackson were no longer married and began using her maiden name. Jackson also believed he and Wiggins were divorced.

More than two years after Wiggins sought the divorce, Jackson was tried and convicted. At Jackson's trial, Wiggins relayed Jackson's robbery-related comments to the jury. Jackson contends marital privilege protects these comments, and the dis-

---

* The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota, sitting by designation.

trict court committed error in admitting Wiggins's testimony.

 Two separate evidentiary privileges arise from the marital relationship. First, the marital adverse testimony privilege prevents one spouse from testifying against the other during the marriage. *United States v. Lilley*, 581 F.2d 182, 189 (8th Cir.1978) (using term "anti-marital facts privilege"). The testifying spouse, however, can waive the adverse testimony privilege. *Id.; Trammel v. United States*, 445 U.S. 40, 53, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). Jackson contends Wiggins did not voluntarily waive the privilege. We disagree.

Before Wiggins testified, the parties questioned her outside the jury's presence to determine whether marital privilege protected Wiggins's testimony and, if so, whether Wiggins waived it. Wiggins stated that although she and Jackson had nothing resembling a marital relationship after their separation, they might still be legally married. She then agreed to testify for the government:

Q. [Prosecuting Attorney]: Ms. Wiggins, you're here under subpoena, and we are asking you to testify. Are you going to refuse to testify unless the court orders you to?

A. [Ms. Wiggins]: No, I won't refuse to testify.

Q. Are you willing to testify for the government?

A. I am willing.

We conclude Wiggins voluntarily waived the adverse testimony privilege.

 Second, the marital confidential communication privilege prohibits testimony concerning statements privately communicated between spouses during their marriage. *Lilley*, 581 F.2d at 189. The non-testifying spouse may invoke the confidential communication privilege, even if the marriage has been dissolved. *Id.* Nevertheless, this privilege does not protect information communicated after the couple has permanently separated. *United States v. Frank*, 869 F.2d 1177, 1179 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 121, 107 L.Ed.2d 82 (1989). Because Jackson and Wiggins were permanently separated without any semblance of a marital relationship at the time of the communication, Jackson was not entitled to invoke the privilege.

Accordingly, we affirm the district court.