# United States Court of Appeals
## For the First Circuit

No. 17-1857

UNITED STATES OF AMERICA,
Appellant,

v.

ERIC PINEDA-MATEO,
Defendant, Appellee,

and

YOVANNYS GUERRERO-TEJEDA,
Intervenor, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Seth R. Aframe, Assistant United States Attorney, with whom Scott W. Murray, United States Attorney, was on brief, for appellant.

Jaye L. Rancourt, with whom Brennan Lenehan Iacopino & Hickey was on brief, for intervenor-appellee.

Eduardo Masferrer, with whom Masferrer & Associates, P.C. was on brief, for appellee.

September 18, 2018

**TORRUELLA**, **Circuit Judge**. We are called upon to decide an issue of first impression in this circuit -- whether to recognize a "joint participant" exception to the spousal testimonial privilege. For the following reasons, we affirm the district court's conclusion that recognition of such an exception is not warranted.

## I.

Before moving forward, a brief survey of the spousal testimonial privilege and the rationales that have traditionally undergirded it is in order.

## A.

The spousal testimonial privilege is an evidentiary privilege that protects a defendant's spouse from having to take the witness stand to testify against the defendant. See United States v. Breton, 740 F.3d 1, 9-10 (1st Cir. 2014). It has deep and "ancient roots" in the history of the common law, and descends "from two canons of medieval jurisprudence." Trammel v. United States, 445 U.S. 40, 43-44 (1980). The first of these canons involved the principle that "an accused was not permitted to testify in his own behalf because of his interest in the proceeding." Id. at 44. The second was "the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one." Id. Based

-2-

on these two rationales, the traditional rule mandated that "what was inadmissible from the lips of the defendant-husband was also inadmissible from his wife."  Id.

These two rationales are now "long-abandoned," and the modern justifications for the privilege focus instead on a pair of distinct but related rationales: "fostering the harmony and sanctity of the marriage relationship," id., and the broader societal interest in "avoid[ing] the unseemliness of compelling one spouse to testify against the other in a criminal proceeding," United States v. Yerardi, 192 F.3d 14, 18 (1st Cir. 1999) (citing Trammel, 445 U.S. at 44-45, 52-53 & n.12); see also Hawkins v. United States, 358 U.S. 74, 77 (1958) ("The basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well.").  This latter rationale has been further explained as stemming from "the 'natural repugnance in every fair-minded person to compelling a wife or husband to be the means of the other's condemnation.'"  In re Grand Jury Subpoena, 755 F.2d 1022, 1028 (2d Cir. 1985) (quoting 8 Wigmore, Evidence § 2228, at 217).

**B.**

Just as the rationales underlying the spousal testimonial privilege have changed over time, the nature and contours of the privilege have themselves evolved since the privilege's common law origins.

In its traditional form, the spousal testimonial privilege was, in fact, an absolute rule that completely barred a spouse from giving any testimony in his or her defendant spouse's case, even testimony that would support the defendant's cause. Trammel, 445 U.S. at 43-44. This rigid rule "remained intact in most common-law jurisdictions well into the 19th century." Id. at 44 (citing 8 Wigmore, Evidence § 2333). That was the case until 1933, when the Supreme Court softened the limitations of this rule "so as to permit the spouse of a defendant to testify in the defendant's behalf." Id.; see also Funk v. United States, 290 U.S. 371, 380-81 (1933). However, it was still the rule that "either spouse could prevent the other from giving adverse testimony." Trammel, 445 U.S. at 44 (citing Funk, 290 U.S. at 373).

The Supreme Court next considered the scope of the spousal testimonial privilege in Hawkins v. United States, 358 U.S. 74 (1958). The defendant in that case sought to invoke the spousal testimonial privilege to prevent his wife from voluntarily

-4-

testifying against him. Id. at 74-75. Despite the Government's invitation to draw a distinction between compelling a spouse's testimony on one hand and allowing her to testify voluntarily on the other, and the Court's acknowledgement of "the critical comments that the common-law rule had engendered," the Court nevertheless allowed the defendant to bar his wife from testifying against him. Trammel, 445 U.S. at 46. Finding that "the law should not force or encourage testimony which might alienate husband and wife, or further inflame existing domestic differences," the Court elected to maintain the "rule which bars the testimony of one spouse against the other unless both consent." Hawkins, 358 U.S. at 78-79.

The most recent occasion on which the Supreme Court has addressed the scope of the spousal testimonial privilege is Trammel v. United States, 445 U.S. 40 (1980). The Court was once again confronted with a defendant who sought to assert the spousal testimonial privilege to prevent his unindicted co-conspirator wife from voluntarily testifying against him in his criminal trial. Id. at 42-43. In that case, the Tenth Circuit had held that the defendant's wife should be permitted to testify against her husband, declaring an exception to the spousal testimonial privilege when the "defendant husband . . . has jointly participated in a criminal conspiracy with his wife." United

States v. Trammel, 583 F.2d 1166, 1169 (10th Cir. 1978). Instead of adopting the Tenth Circuit's approach, the Court found that "[t]he ancient foundations for so sweeping a privilege have long since disappeared," and held that "the existing rule should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely[.] [T]he witness may be neither compelled to testify nor foreclosed from testifying." Trammel, 445 U.S. at 52-53.

## C.

The joint participant exception to the spousal testimonial privilege the Government asks us to adopt, by contrast, does not have anywhere near as long a history as the privilege itself does. The first court to recognize an exception to the spousal testimonial privilege for a witness accused of engaging in a criminal conspiracy with his or her defendant spouse was the Seventh Circuit in United States v. Van Drunen, 501 F.2d 1393 (7th Cir. 1974). In recognizing such an exception, that court found that doing so appropriately "limits the privilege to those cases where it makes most sense, namely, where a spouse who is neither a victim nor a participant observes evidence of the other spouses's [sic] crime." Id. at 1397.

A few years later, the Tenth Circuit followed the Seventh Circuit's lead in adopting the joint participant exception.

Trammel, 583 F.2d at 1170-71. That court relied in substantial part on the Seventh Circuit's reasoning in Van Drunen -- that the goal of preserving the family "does not justify assuring a criminal that he can enlist the aide of his spouse in a criminal enterprise without fear that by recruiting an accomplice or coconspirator he is creating another potential witness." Id. at 1169-70 (internal quotation marks omitted) (quoting Van Drunen, 501 F.2d at 1396).

The other courts of appeals that have considered this issue have reached differing conclusions. The Second, Third, and Ninth Circuits have refused to recognize the joint participant exception. See United States v. Ramos-Oseguera, 120 F.3d 1028, 1042 (9th Cir. 1997), overruled on other grounds by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000); In re Grand Jury Subpoena, 755 F.2d at 1026-28; Appeal of Malfitano, 633 F.2d 276, 278-80 (3d Cir. 1980). By contrast, the Seventh Circuit continues to recognize such an exception even after the Supreme Court's decision in Trammel. United States v. Clark, 712 F.2d 299, 300-02 (7th Cir. 1983) (quoting Van Drunen, 501 F.2d at 1397).[1]

The Third Circuit based its rejection of the exception on several inter-related grounds. First, that court disputed the

---

[1] We have been unable to find, and the parties do not point to a case in which the Tenth Circuit again applied the joint participant exception to the spousal testimonial privilege after Trammel.

-7-

premise that "there is no need in fact to protect" marriages where the partners are involved in crime because those marriages "disintegrate and dissolve." Malfitano, 633 F.2d at 278. The court pointed out that "[t]he spouses in fact may be very happy," and "the fact that under Trammel the witness spouse is the holder of the privilege completely satisfies any concern that the privilege not be extended to marriages that in fact need no protection." Id. Second, that court also disputed the proposition that "marriages with partners that engage in crime should not be protected." Id. (emphasis added). The court emphasized that the assumption that "because of what may be an isolated criminal act, the marriage has no social value whatsoever" might not be true in all cases. Id.

Next, the court opined that it was "not confident that courts can assess the social worthiness of particular marriages or the need of particular marriages for the protection of the privilege." Id. at 279. Given the difficulty that such determinations would involve, the court stated that it "d[id] not think that the court should 'condition the privilege . . . on a judicial determination that the marriage is happy or successful one.'" Id. (quoting United States v. Lilley, 581 F.2d 182, 189 (8th Cir. 1978)). Finally, the court observed that "[g]iven the intimacy of marriage and the fact that conspiracy is a rather

flexible concept, it will be quite easy to allege that the spouses are partners." Id. Therefore, "recognition of an exception where it can be said that both spouses are involved will tend to undermine the marriage precisely in the manner that the privilege is designed to prevent." Id.

The Second Circuit echoed some of the same concerns. That court stated that it was "unable to accept the proposition that a marriage cannot be a devoted one simply because at some time the partners have decided to engage in a criminal activity." In re Grand Jury Subpoena, 755 F.2d at 1026. Further, it also based its conclusion, in part, on the importance of protecting the marriage relationship from the "'natural repugnance in every fair-minded person to compelling . . . the culprit to the humiliation of being condemned by the words of his intimate life partner,' forced from her by governmental compulsion." Id. at 1028 (citation omitted) (quoting 8 Wigmore, Evidence § 2228 at 217).

On the other side of the split is the Seventh Circuit, which is the only circuit to have recognized a joint participant exception to the spousal testimonial privilege post-Trammel. Clark, 712 F.2d at 300-02. Relying heavily on its precedent, the court reiterated that the spousal testimonial privilege should be limited "to those cases where it makes most sense, namely, where a spouse who is neither a victim nor a participant observes

evidence of the other spouse's crime," id. at 301 (quoting Van Drunen, 501 F.2d at 1397), and that the underlying goal of the privilege to preserve the sanctity and harmony of the family "do[es] not justify assuring a criminal that he or she could enlist the aid of a spouse in a criminal enterprise without fear that by recruiting an accomplice the criminal was creating another potential witness," id. at 301 (citing Van Drunen, 501 F.2d at 1396). Further, the court stated that "the rehabilitative effect of a marriage, which in part justifies the privilege, is diminished when both spouses are participants in the crime." Id. at 301 (citing Van Drunen, 501 F.2d at 1397). Finally, the Seventh Circuit determined that "a joint participants exception is consistent with the general policy of narrowly construing the privilege." Id.

## II.

Having assayed the history of the spousal testimonial privilege and the joint participant exception, we turn to the facts of this case. Because this case has not yet proceeded to trial, we draw the relevant facts from the Government's indictment. See, e.g., United States v. Colombo, 852 F.2d 19, 21 (1st Cir. 1988) (using the facts alleged in the indictment in reviewing the district court's dismissal of an indictment).

-10-

**A.**

On September 25, 2015, a confidential informant attempted to call a drug dealer named "Tony." Yovannys Guerrero-Tejeda ("Guerrero") -- who was recorded by law enforcement without her knowledge -- and, in consultation with another individual nearby (alleged to have been her husband, Eric Pineda-Mateo ("Pineda")), told the informant to raise $1,000 to pay part of a prior drug debt before arranging another drug transaction.

Three days later, the informant called Guerrero again and "arranged to purchase three fingers of heroin from Guerrero and Pineda." On October 6, 2015, the informant and Guerrero exchanged several more phone calls that were covertly recorded by law enforcement, and arranged to meet at a New Hampshire mall for a drug transaction. At this meeting, Guerrero gave the informant a bag of heroin in exchange for $1,000 in cash. Two weeks later, the informant arranged a second drug transaction with Guerrero and Pineda, after which the informant attempted to set up a third transaction. On November 16, 2015, Guerrero and Pineda appeared together at the location where they had agreed to meet the informant and were arrested by the New Hampshire state police and others. In the car, which was registered to Pineda, the police found twenty-five grams of fentanyl.

The Government alleged that the evidence established a

conspiracy between Guerrero and Pineda throughout this series of events. For example, during the recorded phone calls with the informant, Guerrero repeatedly referred to "her husband" and negotiated the transactions in concert with him. Additionally, Pineda also appeared to be the person who acquired the heroin subsequently sold to the informant. Furthermore, agents observed both Guerrero and Pineda meeting with the informant in person to conduct the second transaction, during which Guerrero and Pineda spoke to each other in Spanish before speaking in English to the informant. Finally, Guerrero and Pineda were arrested together at the location of the planned third drug transaction.

**B.**

On December 2, 2015, a federal grand jury indicted Guerrero for one count of conspiracy to possess with intent to distribute and conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count 1), and two counts of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) (Count 2 and 3). Pineda was indicted only on Count 1. Guerrero subsequently pleaded guilty to all three counts against her in April 2017, while Pineda elected to go to trial. Intending to call her as a witness at trial, the Government subpoenaed Guerrero and filed a motion in limine "seeking a determination, pursuant to Federal Rule of Evidence 104(a), that her testimony is admissible."

-12-

Guerrero subsequently moved to quash the subpoena on the grounds that the spousal testimonial privilege prevented the Government from compelling her to testify at her husband's trial.[2] In response, the Government moved to compel Guerrero's testimony, seeking to invoke an exception to the spousal testimonial privilege "for a jointly participating spouse in a criminal conspiracy."[3]

After a hearing, the district court granted Guerrero's motion to quash the subpoena and denied the Government's motion to compel Guerrero's testimony at Pineda's trial. The district court acknowledged the aforementioned circuit split as to the recognition of the joint participant exception to the spousal testimonial privilege, but ruled that "[t]he weight of authority" counseled against the recognition of such an exception. The Government then filed this interlocutory appeal of the district court's order.

**III.**

The district court below based its conclusion in part on

---

[2] Guerrero points out that "she was willing to forego possible reductions in her sentence based upon substantial assistance in order to maintain her adverse spousal testimonial privilege and thereby protect her marriage." She further stated that even if this court ruled against her, she would refuse to testify against her husband and "would face civil contempt proceedings if necessary."

[3] The Government did not challenge the legality of the marriage between Pineda and Guerrero before the district court.

its reasoning that the Supreme Court implicitly rejected the joint participant exception "by declining to adopt the Tenth Circuit's approach" in Trammel. The Government challenges this finding on appeal. Because a finding that Trammel does entirely foreclose the recognition of a joint participant exception would be dispositive in this appeal, we address that issue first.

The Government's principal contention is that Trammel should not be read to foreclose the possibility of a joint participant exception because the Supreme Court did not address the joint participant exception recognized by the Tenth Circuit below. Pineda and Guerrero defend the district court's reasoning by arguing that "[d]espite the [G]overnment's invitation to adopt" the joint participant exception, the Supreme Court chose to narrow the privilege instead by vesting it only in the testifying spouse. They contend that the district court correctly interpreted this holding on the broader ground of overruling Hawkins as the Court's rejection of that exception. We are not persuaded by Pineda and Guerrero's arguments. Instead, we agree with the Government that Trammel is not a categorical bar to the possibility of recognizing a joint participant exception to the spousal testimonial privilege.

Trammel, as the Government accurately points out, does not discuss the joint participant exception on which the Tenth

-14-

Circuit had rested its decision, let alone opine on its merits. See Trammel, 445 U.S. at 41-53. We find it difficult to see how the Supreme Court rejected an exception that it did not so much as mention. In fact, the Court made clear that it granted certiorari in that case "to consider whether an accused may invoke the privilege against adverse spousal testimony so as to exclude the voluntary testimony of his wife." Id. at 41-42. It is axiomatic that the Supreme Court can grant a petition for a writ of certiorari as to virtually any issue in a case it wishes to review, and decide cases on any ground it feels is appropriate. See, e.g., Bosse v. Oklahoma, 137 S. Ct. 1, 2 (2016) ("[I]t is this Court's prerogative alone to overrule one of its precedents." (alteration in original) (citations omitted)); Vance v. Terrazas, 444 U.S. 252, 258 n.5 (1980) ("[C]onsideration of issues not present in the jurisdictional statement or petition for certiorari and not presented in the Court of Appeals is not beyond our power, and in appropriate circumstances we have addressed them.").

Applying these principles has several consequences in this case. First, because it is the Supreme Court's prerogative to resolve cases on whatever grounds it believes appropriate, we think that it would be wrong to interpret the Supreme Court's decision to resolve the broader doctrinal question in Trammel as implicitly rejecting the narrower ground for affirmance -- the

-15-

joint participant exception.  See Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399 (1821) ("It is a maxim not to be disregarded, that general expressions . . . are to be taken in connection with the case in which those expressions are used.  If they go beyond the case, they . . . ought not to control the judgment in a subsequent suit.").  Second, we are not convinced that much weight should be given to the fact that the Government had "invited" the Trammel Court to approve the joint participant exception.  Because the Supreme Court's discretion extends not only to the grounds for resolving a case but also to the specific issue(s) it reviews, we think it unwise to read any dispositive meaning into the lack of any discussion of the joint participant exception in the Trammel opinion, or the Court's decision not to take up the Government's "invitation" to recognize the joint participant exception.  See Maldonado Santiago v. Velázquez García, 821 F.2d 822, 828 (1st Cir. 1987) (stating that interpreting the Supreme Court to have overruled a line of precedent sub silentio would not "reflect . . . a prudent reading of precedent").  The Supreme Court's silence on this issue is just that -- silence.

The context in which Trammel was decided further reinforces the conclusion that the Supreme Court did not implicitly foreclose the joint participant exception. Prior to Trammel, the Court had decided Hawkins, in which it held that a criminal

-16-

defendant could assert the spousal testimonial privilege to prevent his or her spouse from testifying against him, even when the spouse was willing to do so. 358 U.S. at 77. In Trammel, the defendant's only claim before the Tenth Circuit was that "the admission of the adverse testimony of his wife, over his objection, contravened [the Supreme] Court's teaching in Hawkins v. United States . . . ." 445 U.S. at 43. The Tenth Circuit rejected this argument, concluding that "[n]othing in Hawkins or any other reported decision . . . prohibits the voluntary testimony of a spouse who appears as an unindicted co-conspirator . . . ." Trammel, 583 F.2d at 1168. In light of this background, therefore, the conclusion that the Supreme Court did not implicitly reject the joint participant exception makes sense. The Supreme Court found the Tenth Circuit's decision in Trammel called for "a re-examination of Hawkins," which is precisely what the Court did without approving or disapproving the joint participant exception recognized by the Tenth Circuit. Trammel, 445 U.S. at 42.

Absent guidance to the contrary from the Supreme Court -- which we do not find in Trammel -- we decline to hold that Trammel completely precludes the possibility of recognizing a joint participant exception if the appropriate balancing analysis weighs in its favor. For these reasons, the district court's conclusion that the Supreme Court implicitly rejected the joint

-17-

participant exception in Trammel is incorrect.

## IV.

Having determined that Trammel does not squarely resolve the question posed by this appeal, we now turn to the district court's conclusion not to recognize such a joint participant exception. We review the admission or exclusion of evidence over claims of privilege for an abuse of discretion. In re Grand Jury Subpoena, 662 F.3d 65, 69 (1st Cir. 2011). However, when the issue presented is of a legal nature, those "[r]ulings on questions of law are reviewed de novo." Id.

## A.

Rule 501 of the Federal Rules of Evidence governs claims of privilege in the federal courts. Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998). That Rule provides that "[t]he common law -- as interpreted by United States courts in the light of reason and experience -- governs a claim of privilege . . . ." Fed. R. Evid. 501. It empowers the federal courts to "develop[] rules of privilege on a case-by-case basis." United States v. Gillock, 445 U.S. 360, 367 (1980). Furthermore, the Supreme Court has instructed that a privilege should only apply in a particular case if it "promotes sufficiently important interests to outweigh the need for probative evidence." Univ. of Pa. v. EEOC, 493 U.S. 182, 189 (1990) (quoting Trammel, 445 U.S. at 51).

-18-

The spousal testimonial privilege is one of the two marital privileges recognized under the Federal Rules of Evidence.[4] It "allows one spouse to refuse to testify adversely against the other in criminal or related proceedings . . . ." Breton, 740 F.3d at 9-10. Unlike the marital communications privilege, which either spouse may assert, id. at 10, "the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." Trammel, 445 U.S. at 53.

The Government contends that Rule 501's mandate for the federal courts to develop the law of evidentiary privileges "in light of reason and experience" requires us to weigh the Government's need for evidence against the policy rationales that underlie a claimed privilege. A proper balancing of these interests, the Government further argues, justifies recognizing a joint participant exception to the spousal testimonial privilege.

Specifically, the Government points to two features of conspiracies that it claims enhances the need for the Government

_____

[4] The other recognized marital privilege is the marital communications privilege, which "permits a defendant to refuse to testify, and allows a defendant to bar his spouse or former spouse from testifying, as to any confidential communications made during their marriage." Breton, 740 F.3d at 10. The parties agree that the marital communications privilege cannot be a basis for excluding Guerrero's testimony here.

to be able to gather evidence.  First, the Government argues that a "[c]ollective criminal agreement . . . presents a greater potential threat to the public than individual derelicts," Callanan v. United States, 364 U.S. 587, 593 (1961), a danger that it asserts is "peculiar."  Not allowing the Government to abrogate the privilege in this context "wrongly places the law on the side of protecting conspiracies within a marriage," and therefore the Government "has a particularly strong need for evidence so that it can dismantle the conspiracy before it inflicts additional harms on the public."  Second, the Government points to the inchoate and secretive nature of conspiracies.  The Government emphasizes that it often needs to obtain testimony of a co-conspirator in order to subvert the conspiracy, and cites to the hearsay exception for statements of a co-conspirator, Fed. R. Evid. 801(d)(2)(E), to highlight the importance of access to this critical evidence in conspiracy prosecutions.

On the other side of the scale, the Government argues that society's interest in preserving marital harmony is "diminished in the particular context of conspiracy prosecutions."  Married couples who conspire to commit crimes, the Government urges, "have abused the marital privilege granted to them by the state."  Because "[i]t would be odd to permit a spouse to invoke the spousal testimonial privilege . . . to protect a criminal

conspiracy formed within the marriage that is harmful to the state," the Government argues that the force of the public policy behind the privilege is "at its nadir" in conspiracy cases.

The Government, however, never addresses the "experience" side of Rule 501's equation in arguing for the exception to the longstanding spousal testimonial privilege. This Court has recognized the spousal testimonial privilege without the joint-participant exception for many years, and yet the Government never presents an argument as to how our experience with the spousal testimonial privilege shows that we should now recognize this exception when we did not in the past.[5] See, e.g., Jaffee v. Redmond, 518 U.S. 1, 6 (1996) (citing the unanimous agreement of the 50 states and the "skyrocket[ing]" demand for counseling services as evidence of how our "experience" with mental health had changed such that the Court needed to recognize the psychotherapist privilege). When reason, by itself, fails to

_____

[5] The Government does suggest in a footnote to its brief that the treatment of the privilege in the states supports its position that we should judicially carve out the joint-participant exception to this privilege pursuant to Rule 501. But the Government does not dispute that a substantial majority of the states recognize the spousal testimonial privilege without carving out such an exception. In fact, the Government's own account of state practice reveals that only two of the thirty states that recognize the privilege have adopted the exception it favors. Moreover, as the Government acknowledged at oral argument, of the states that have limited the privilege, an overwhelming number have done so via legislation rather than through judicial means.

-21-

provide an unequivocal interpretation, a court's experience with the privilege weighs even more on its decision. See Swidler & Berlin v. United States, 524 U.S. 399, 410 (1998) (noting that where "[i]t has been generally, if not universally, accepted, for well over a century, that the attorney-client privilege survives the death of the client," the Court would need more than "thoughtful speculation" to justify recognizing a new exception).

**B.**

It seems clear then that the interests the spousal testimonial privilege is designed to serve continue to be quite substantial. Compared to these interests, the Government's asserted evidentiary interests on the other side of the scale are, in our view, less hefty. The inchoate and secretive features of conspiracies to which the Government alludes in support of its argument are common to every conspiracy prosecution, and are not alleviated or exacerbated by the fact that some or both members of the conspiracy are married to each other. By the Government's logic, the difficulties involved in prosecuting conspiracies would outweigh the significant countervailing interests that underlie a number of other evidentiary privileges as well, including, for example, the Fifth Amendment privilege against self-incrimination.[6] The Fifth Amendment, of course, is a constitutional

---

[6] Of course, the other half of the Government's argument under

-22-

right, and not just a matter of common law as is the spousal testimonial privilege. But given that both privileges are deeply rooted in history, the interests that underlie the spousal testimonial privilege are similarly significant.[7]

The force of the Government's argument as to the need for evidence in this context is further undermined by its acknowledgement that "[t]here are many types of evidence that a court may consider to determine whether a couple was engaged in a criminal agreement, without requiring testimony from the unwilling spouse." The Government's tacit admission that there is no shortage of other evidence (at least in the mine run of cases) with which the Government can make the predicate showing necessary to invoking its proposed joint participant exception belies its claim that the need for evidence is particularly high in conspiracy

---

the balancing analysis is that the rationales underlying the spousal testimonial privilege are significantly diminished in the specific context of conspiracy prosecutions. As further explained below, however, that argument is also unpersuasive.

[7] The Government also briefly refers to the treatment of co-conspirators' statements as non-hearsay, Fed. R. Evid. 801(d)(2)(E), as evidence of the law's preference for "facilitat[ing] the presentation of co-conspirator statements" in criminal trials. This comparison is inapt. Rule 801(d)(2)(E) rests on a theory of agency, "the underlying concept being that a conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all." Bourjaily v. United States, 483 U.S. 171, 188 (1987) (Blackmun, J., dissenting). The rule does not manifest a legislative preference for co-conspirator statements generally.

cases. We are therefore not persuaded that the Government's need to pierce the spousal testimonial privilege is cognizably greater in cases where the spouses are alleged to have engaged in a criminal conspiracy than in other cases.

The Government also contends that "the public policy in favor of applying the privilege is weak in conspiracy cases." We also find that argument unpersuasive. As the Third Circuit observed, this argument seemingly assumes "that because of what may be an isolated criminal act, the marriage has no social value whatsoever," which "may not be true" in all cases. Malfitano, 633 F.2d at 278. In fact, "the marriage may well serve as a restraining influence on couples against future antisocial acts and may tend to help future integration of the spouses back into society." Id. Likewise, the Second Circuit has stated that it is "unable to accept the proposition that a marriage cannot be a devoted one simply because at some time the partners have decided to engage in a criminal activity." In re Grand Jury Subpoena, 755 F.2d at 1026. We agree in large part with the reasoning of these two courts.

The Supreme Court once described a marriage as "a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred." Griswold v. Connecticut, 381 U.S. 479, 486 (1965). The Court recently underscored that "[n]o union

-24-

is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice, and family.  In forming a marital union, two people become something greater than once they were."  Obergefell v. Hodges, 135 S. Ct. 2584, 2608 (2015).  In light of these statements, we decline to engage in value judgments about which marriages are worthy of protection and which are not, and find that "reason and experience" counsels our refraining from recognizing an exception that requires courts to make such determinations.

In arguing that the interest in marital harmony is not always paramount, the Government also points to "long-standing criticism of the privilege by the Supreme Court, the States and commentators."  However, to the extent the Government is correct that the spousal testimonial privilege is rightly criticized as being too broad, we believe that this concern was squarely addressed by the Supreme Court in Trammel.  The Government, after all, cites to Trammel itself for its criticism of the privilege's breadth and capacity to impede a court's path to the truth.  Yet, when provided the opportunity to address this problem, the Supreme Court chose to vest the privilege only in the testifying spouse instead of opting for the narrower remedy of recognizing a joint participant exception.  As previously noted, this holding is not conclusive that no joint participant exception should be

recognized, but it does significantly undermine the Government's claim that the law as it currently stands does not strike the proper balance between protecting the marriage and the Government's need for evidence in conspiracy cases.

We also decline the Government's invitation to follow the Seventh Circuit's lead because we do not find persuasive the two rationales on which the Seventh Circuit's view is based. As to the first rationale, that the spousal testimonial privilege "did not justify assuring a criminal that he or she could enlist the aid of a spouse in a criminal enterprise without fear that . . . the criminal was creating another potential witness," Clark, 712 F.2d at 301 (quoting Van Drunen, 501 F.2d at 1396), we agree with the Second Circuit that Trammel addressed this concern by vesting the privilege in only the witness spouse, see In re Grand Jury Subpoena, 755 F.2d at 1026. Regarding the Seventh Circuit's second rationale that "the rehabilitative effect of a marriage, which in part justifies the privilege, is diminished when both spouses are participants in the crime," Clark, 712 F.2d at 301 (citing Van Drunen, 501 F.2d at 1397), we note that "rehabilitation ha[s] never been regarded as one of the interests served by the spousal privilege." In re Grand Jury Subpoena, 755 F.2d at 1026. Even if we were to accept that rehabilitation is one of the privilege's underlying rationales, we do not find it to

be necessarily true in all cases that a marriage in which the spouses are parties to a criminal conspiracy prevents that marriage from being one that would aid in rehabilitation. At the very least, the uncertainty surrounding this principle persuades us that the best course in this case is to decline the Government's invitation to recognize the joint participant exception.

Notably, the Government fails to address how the exception it seeks is consistent with the broader societal interest behind the spousal testimonial privilege in avoiding the perceived unseemliness of seeing a spouse being coerced to actively contribute to the prosecution of his or her spouse. Even in cases where the married couple is, in fact, using the marriage as a shield to hide joint criminal activity and "abus[ing] the marital privilege granted to them by the state," it is not apparent that the broader concern about the appearance of the Government coercing one spouse to testify against the other applies with any less force.

Accordingly, the Rule 501 balancing analysis weighs in favor of rejecting the joint participant exception.

## C.

The Government suggests two additional reasons why it believes it would be appropriate to recognize a joint participant exception to the spousal testimonial privilege. First, the

-27-

Government presents this case as an opportunity to "unify the law governing the marital privileges," noting that every federal court of appeals "has adopted a joint participant exception to the martial communications privilege." Because both privileges are rooted in the policy of promoting marital harmony, the Government urges, "the outcome of the Rule 501 balance in the conspiracy context should also be the same" for both privileges.

However, the importance of distinguishing between these two privileges is evident in several respects, not least of which is the manner in which each operates. The marital communications privilege can be asserted by both spouses, see United States v. Picciandra, 788 F.2d 39, 43 (1st Cir. 1986) (noting that the marital communications privilege "prohibits one spouse from adversely testifying to confidential communications made by the other during their marriage"), in order to "ensur[e] that spouses . . . feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." Breton, 740 F.3d at 10 (quoting United States v. Brock, 724 F.3d 817, 820-21 (7th Cir. 2013) (citation omitted) (internal quotation marks omitted)). The spousal testimonial privilege, by contrast, can only be asserted by the testifying spouse, see Trammel, 445 U.S. at 53, in order to protect him or herself from taking the witness stand at all. See Trammel, 445 U.S. at 51 (noting that the spousal

testimonial privilege's "protection is not limited to confidential communications."). This is important because the universe of testimony that a joint participant exception would make available to the Government (where it otherwise would not be) is smaller and narrower for the marital communications privilege than for the spousal testimonial privilege. Thus, invoking a joint participant exception to the spousal testimonial privilege would allow the prosecutor to force the spouse to take the stand and make available not only marital communications, but also a panoply of other information -- the revealing of which may be detrimental to marriage.

Furthermore, the joint participant exception to the marital communications privilege is arguably less pernicious to marital harmony than an equivalent abrogation of the spousal testimonial privilege. To be sure, the Government's presentation of communications between two spouses may very well be harmful to the relationship. But, unlike when a prosecutor enters evidence consisting of marital communications, piercing the spousal testimonial privilege necessarily involves <u>coercing</u> a non-defendant spouse to take the witness stand, face his or her spouse, and put the nails in the defendant spouse's proverbial coffin. Such a display undoubtedly also raises the unseemly spectre that "undermine[s] the marriage precisely in the manner that the

privilege is designed to prevent."  Malfitano, 633 F.2d at 279.

The second argument offered by the Government is that the already-established injured spouse exception[8] demonstrates that the Trammel decision "does not mean that the spousal testimonial privilege is a privilege that should have no exceptions."  The Government goes on to emphasize that in Breton, we found that "the injured spouse exception is warranted, in part, because of the peculiar need for evidence in cases involving spouse-on-spouse or spouse-on-child crime."  But, assuming as we do that the underlying purpose behind the injured-spouse exception is to protect the family, Wyatt v. United States, 362 U.S. 525, 529 (1960), it is difficult to see how that rationale has any application to the joint participant exception the Government asks us to adopt.  All that this argument does for the Government is bring us back to the Rule 501 balancing analysis, where it fails to persuade us that the balance weighs in favor of recognizing the joint participant exception.

**V.**

For all the foregoing reasons, we find that the Government's interest in having the ability to compel the testimony

---

[8]  The Supreme Court recognized that, in the case of spouse-on-spouse and spouse-on-child crime, there is a vital need for evidence from the non-defendant spouse that justifies an exception to the spousal testimonial privilege.  Breton, 740 F.3d at 11.

of a defendant's co-conspiring spouse are outweighed by the significant policy concerns underlying the spousal testimonial privilege. This time-honored evidentiary privilege is no less deserving of protection when the witness whose testimony it seeks to compel is alleged to be a co-conspirator than when he or she is not. We therefore join the majority of our sister circuits that have considered this issue and conclude that the balance of interests mandated by Rule 501 weighs against recognizing the joint participant exception to the spousal testimonial privilege. The district court, therefore, did not abuse its discretion in denying the Government's motion to compel Guerrero to testify against her husband, and in granting Guerrero's motion to quash the Government's subpoena.

We note, however, that our decision today does not foreclose the possibility of a defendant's co-conspirator spouse taking the stand to testify against the defendant in a conspiracy case. As it often does in co-conspirator cases, the Government remains free to attempt to persuade a defendant's co-conspirator spouse to testify voluntarily against their defendant spouse. We hold only that the Government cannot <u>compel</u> the non-defendant spouse's testimony in conspiracy prosecutions absent the availability of another exception to this privilege.

For these reasons, the decision of the district court is

affirmed.

**<u>Affirmed</u>.**